UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| TYRONE DERRELL KING, | ) | |
| Plaintiff | ) ) ) | |
| vs. | ) ) | CAUSE NO. 3:04-CV-420 RM |
| EVELYN RIDLEY-TURNER, *et al.*, | ) ) ) | |
| Defendants | ) | |

OPINION AND ORDER

Tyrone King, a prisoner confined at the Indiana State Prison ("ISP"), submitted a complaint under 42 U.S.C. § 1983, alleging that Indiana Department of Correction ("IDOC") and Prison Health Services ("PHS") officials violated his federally protected rights. The court dismissed defendant Michael Miller pursuant to 28 U.S.C. § 1915A. Defendants Evelyn Ridley-Turner, Dean Reiger, Cecil Davis, and Daniel Bonfield ("State Defendants"), and Carla Foster, PHS Chief Executive Officer Craig Underwood, and Dr. Eke Kalu, M.D., ("PHS Defendants") have filed separate motions for summary judgment pursuant to FED R. CIV. P. 56. Mr. King has responded with a motion to dismiss the defendants' summary judgment motions, effectively his response to the dispositive motions. For the reasons that follow, the court grants the defendants' summary judgment motions.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir. 1991). Rule

> 56(e) requires that the nonmoving party who bears the burden of proof on an issue for trial allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file. Celotex Corp., 477 U.S. at 324.
>     . . . In considering whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there exists some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Ranochakio Corp., 475 U.S. 574, 586 (1986). Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 298 (7th Cir. 1996).

In support of their summary judgment motion, the State Defendants submit the declarations of defendants Davis, Bonfield, and Reiger, and an untitled document dealing with Mr. King's classification. The PHS Defendants submit the declarations of defendants Kalu and Underwood, and documents from Mr. King's medical-dental records. Mr. King responds with his affidavit, documents from his records, letters he wrote to various officials, and official policies and manuals. The State Defendants' reply, which the PHS Defendants joined in part, asks the court not to consider certain of the plaintiff's exhibits either because they are not authenticated pursuant to Fed. R. Evid. 901(a) or because they are not relevant to his claims or contain hearsay.

The "unauthenticated" documents purport to be official documents generated by IDOC officials, and their identity and authenticity is provisionally clear on their face. If these documents are authentic, they cannot come as a surprise to the State Defendants, who would have provided them to Mr. King. If they are not authentic, the court would expect a response from the defendants

denying their authenticity. The defendants do not challenge the documents' authenticity, so the court will consider them, though it will not consider irrelevant or inadmissable evidence contained within any of the plaintiff's exhibits.

Mr. King alleges that he is physically disabled and has a history of one of his legs giving out because it has a ruptured patella and a ruptured quadricep. He states that the shower area in D Cellhouse, where he was housed in August 2002, had no grab bars on the wall and had no skid-proof surface. He alleges that on August 21, 2002, his injured leg gave out while he was in the shower, and that he fell, struck his face on a steel sink, and injured his teeth. Mr. King alleges that defendants Davis and Bonfield violated the Constitution's Eighth Amendment and the Fourteenth Amendment's equal protection clause by placing him in a housing unit unsuitable for a prisoner with his medical problems and disability. He also alleges that the defendants have not provided medical attention for his dental injuries.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294 (1991).

The Equal Protection Clause provides that "no State shall . . . deny to any persons within its jurisdiction the equal protection of laws." In so providing, "the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." Willowbrook v.

3

Olech, 528 U.S. 562, 564 (2000). Mr. King alleges that "other similarly situated (disabled) offenders in other housing units are provided access to showers that meet their physical needs" (Complaint at p. 8). Because Mr. King does not allege that he was discriminated against based on his race or any other protected class, he raises this claim as a "class of one." *See also* Lauth v. McCollum, 424 F.3d 631 (7th Cir. 2005).

Mr. King and the State Defendants agree that when Mr. King fell he was housed in D Cellhouse, which does not contain accommodations for disabled inmates. The parties disagree on whether Mr. King was disabled and on his medical and disability classification on August 21, 2002.

The State Defendants assert that there are housing units at the Indiana State Prison equipped to handle disabled inmates, that medical staff classify inmates according to their medical and disability status (Davis declaration at ¶ 5), and that a prisoner's medical and disability status are taken into account when making housing assignments. (Davis declaration at ¶ 7). According to the State Defendants, in June 2002, Mr. King was classified as "free from injury and having no disability." (Davis declaration at ¶ 10). Defendants' exhibit A is a untitled document, dated January 25, 2006, purporting to deal with "offender information system classification results." According to this document, Mr. King's last annual review before August 21, 2002, was on June 8, 2001, when he had a medical level of "A" and a disability level of "A."[1]

---

[1] According to plaintiff's exhibit #1, a medical classification of "A" is for inmates who are "free of illness or injury; free of physical, mental or emotional impairment; individuals with short term self limiting conditions requiring minimal surgical, medical nursing, intervention limited to 30 days' duration." (Exhibit #1, Appendix 13-C). A disability status of "A" means an inmate has "no disability." (Exhibit #1, Appendix 13-D).

4

Mr. King responds that he wasn't evaluated on June 11, 2002, and that defendants' exhibit A is a "false document." Plaintiff's exhibit #2 is a group of three purported reports of classification dated June 27, 2001, September 12, 2001, and May 21, 2002, contradicting defendants' exhibit A. Mr. King asserts that he has been continuously classified having a "G" medical rating and a "C" disability rating, which is supported by the reports of classification he submits.[2]

Mr. King alleges that "Defendants Davis and Bonfield . . . failed to create and maintain a showering area adequately equipped for physically disabled offenders housed in the D-Cell House Unit." (Compliant at p. 5). The Constitution doesn't require prison officials to make all housing units suitable for handicapped prisoners. But housing disabled inmates in a unit where they are likely to be injured because it is not equipped to handle them may constitute deliberate indifference — which is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992), *citing* McGill v. Duckworth, 944 F.2d at 347. The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. at 836. A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th

---

[2] According to plaintiff's exhibit #1, A medical classification of "G" is for inmates with "any stabilized, permanent or chronic physical or medical condition," (Exhibit #1, Appendix 13-C), and disability classification "C" is for "individuals with a mobility and ambulatory impairment including wheelchairs and crutches." (Exhibit #1, Appendix 13-D).

5

Cir. 1986). *See* Frost v. Agnos, 152 F.3d 1124 (9th Cir. 1998) (disabled prisoner on crutches who had fallen stated a § 1983 claim for the risks presented at his prison, including slippery shower floors with no safety procedures).

The State Defendants have submitted a document dated in 2006 that purports to show that Mr. King was not disabled in August 2002; Mr. King has submitted his own affidavit and what purport to be official classification reports prepared in 2001 and 2002, showing that prison officials had classified him as disabled. Giving Mr. King the benefit of the inferences to which he is entitled as the non-moving party, this court cannot say that he had a disability rating in August 2002 that would have led prison officials to conclude that it was safe to place him in a housing unit without accommodations for disabled inmates.

The court now turns to the question of whether defendants Davis and Bonfield were responsible for placing Mr. King in D Cellhouse. Section 1983 creates a cause of action for damages based on personal liability. A plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains, Starzenski v. City of Elkhart, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. Benson v. Cady, 761 F. 2d 335, 339 (7th Cir. 1985). The doctrine of *respondeat superior*, which allows a superior to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001); Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993).

Defendant Davis was the facility superintendent. In his declaration, he states that the prison's classification department "would determine the

appropriate housing unit for an offender based upon his classification designation including disability and medical status." (Davis declaration at ¶ 16). He further states that he was not responsible for determining the appropriate housing unit for Mr. King (Davis declaration at ¶ 17), but that had Mr. King complained to him, he would have "directed the Classification Department at the Indiana State Prison to review his classification and housing placement." (Davis declaration at ¶ 18). Defendant Bonfield states in his declaration that as the facility's Safety Hazard Manager, he is "not involved in any decision to place an offender in a specific housing unit within the ISP," (Bonfield declaration at ¶ 2), nor is he involved in determining inmates' disability ratings (Bonfield declaration at ¶ 5).

Mr. King's submissions don't contradict defendants Davis and Bonfield's statements that they weren't involved in the decision to place him in D Cellhouse. The evidence before the court establishes that there was a process for evaluating inmates based on medical and disability criteria to determine where they should be housed. That process might not have worked properly in this case, but the evidence before the court does not support an inference that Defendants Davis and Bonfield were personally involved in the decision to place Mr. King in a housing unit that jeopardized his safety.

Mr. King also alleges that Commissioner Ridley-Turner, Supt. Davis, Dr. Reiger, and the PHS Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishments by denying him adequate and meaningful dental treatment to repair the injuries he suffered as a result of his fall. In medical care cases, the test established by Farmer v. Brennan and Wilson v. Seiter is expressed in terms of whether there was deliberate indifference to a prisoner's

serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Eighth Amendment principles prohibit prison officials "from intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Gil v. Reed, 381 F.3d 649, 664 (7th Cir. 2004). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997).

The State and PHS Defendants assert that they had no personal involvement in the health care decisions Mr. King complains of. Defendants Underwood and Kalu state in their declarations that PHS didn't provide dental treatment to IDOC inmates, and that the IDOC contracted with Mid America Health Services for dental services. They state that Mr. King's claims against them "amount to a disagreement with a dental decision made *by other individuals.*" (PHS Defendants' memorandum of law at p. 6) (emphasis in original). Supt. Davis, Mr. Bonfield, and Dr. Reiger state in their declarations that they had no personal involvement in any decisions regarding medical care afforded to Mr. King and that they didn't prevent Mr. King from receiving dental treatment. Prison administrators are entitled to rely on the judgment of medical professionals. See Johnson v. Doughty, 433 F.3d at 1015; Zentmyer v. Kendall County, Ill., 220 F.3d 805, 812 (7th Cir. 2000); Shakka v. Smith, 71 F3d 805, 812 (4th Cir. 1995). Defendant Ridley-Turner, as IDOC Commissioner, would have had no direct

personal involvement in housing decisions for individual prisoners.

In his complaint, and in his affidavit, Mr. King alleges that defendants Ridley-Turner and Reiger entered into a contract that limited dental care prisoners could receive for financial, not medical, reasons. The defendants point out that to establish that any defendant promulgated or enforced a policy that was deliberately indifferent to his serious medical needs Mr. King would have to "show the policy at issue," suggesting he cannot show such a policy. Because the defendants met their initial obligation under Fed. R. Civ. P. 56, the burden shifts to Mr. King to come forth with evidence sufficient, if viewed as fully in his favor as reasonable, would allow a factfinder to decide in his favor the question of whether an IDOC contract or policy was deliberately indifferent to his serious medical needs. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

Mr. King states in his affidavit that defendants Ridley-Turner and Reiger entered into a contract with the companies providing care to inmates that "severely restricted these medical procedures to me based on cost rather than ability to conduct such repairs." (King affidavit at ¶ 4). He also states that his "dental needs were ignored based on their cost to Prison Health Services, Inc." (King affidavit at ¶ 5). Mr. King lacks personal knowledge to make these statements. Federal Rule of Evidence 602. He also submits the Dental Services Manual (Exhibit #10), the IDOC Health Care Services Directive dealing with dental services (Exhibit #11), and Executive Directive # 02-08 dealing with delivery of medical care (Exhibit #13). These documents don't support the conclusion that the State Defendants had a policy of denying inmates needed dental treatment based on cost.

The evidence before the court establishes that PHS did not have a contract, restrictive or otherwise, with the State to provide dental care to inmates. PHS and its employees did not provide dental care to inmates, and the PHS Defendants had no personal involvement in his dental care. No admissible evidence supports Mr. King's allegation that the State Defendants individually or as a group established a policy or practice that led to denial of needed dental care to him because of cost, or that they had any personal involvement in his dental treatment after he was injured.

For the foregoing reasons, the court GRANTS the defendants' motions for summary Judgment (Dockets ## 94 and 109), DENIES the plaintiff's motion to dismiss the defendants' summary judgment motions (docket #124), and DIRECTS the clerk to enter judgment against the plaintiff and in favor of all defendants.

SO ORDERED.

ENTERED: February  23 , 2007

>       /s/ Robert L. Miller, Jr.
>      Chief Judge
>      United States District Court

10